Good morning, Your Honors, and may it please the Court, Dan Geiser on behalf of Sidley Austin, I plan to focus on the issues related to this Court's jurisdiction. Dale Barnes on behalf of KPMG will focus on the merits. This Court has jurisdiction over this appeal, as this case was properly removed under Section 205, and the District Court had jurisdiction to decide the federal arbitration claim on the merits, just as it would any other claim, such as a 1983 claim, a Title VII discrimination claim, or a similar federal claim. Plaintiffs assert two broad arguments challenging this Court's jurisdiction, but both fail. First, to the extent plaintiffs assert that the District Court lacked jurisdiction under 1447c, after deciding the federal claim, the argument has been flatly rejected by every circuit to have considered the issue. And along an unbroken string of decisions, these Courts, including this Court, have determined that jurisdiction is determined at the time of removal, so that when removal is proper at the outset, a later decision or a later change or development of the suit does not result in a lack of jurisdiction. And that necessarily includes a later dismissal of a federal claim, which this Court held in Price v. PSA. Because jurisdiction is the power to decide a case either way, a decision that a claim fails is not a decision that the Court lacked jurisdiction. And applying that principle here, because this case was properly removed and the District Court had jurisdiction at the time of removal, its decision on the federal issue necessarily did not fall under 1447c, because plaintiffs ---- Ginsburg. What gives us jurisdiction to decide? Shaheen. To decide both the propriety of the remand order and the propriety of every order preceding that, because the remand order is a final judgment under 1291. Well, that's where I have a little more difficulty. And I'm not sure what order preceded it. The order that you say preceded it, is the order lifting the stay? Shaheen. That's correct. So there are actually three decisions, three substantive decisions on the merits in this case. There's the first order dating back to December of 2004, where the Court properly applied Section 205, found jurisdiction, and then compelled arbitration. Which isn't really in front of us, except as an alternate ground. That's correct. And as to which we, I think, would lose jurisdiction under Section 16, wouldn't we? I believe you would, yes. That's correct. So but in that case, the only reason this Court would lose jurisdiction is because the Court found in our favor they enforced arbitration rights. So in the second order, where the Court found that the decision by the NASD removed the case from arbitration, that's effectively a denial of arbitration rights. So that decision itself is independently appealable. But we all — That's appealable under 16. Under Section 16, that's correct. And then we also have jurisdiction to reach that decision on arbitration under the rule that a remand order, which is a final order, allows this Court can review that order and can review any decision that precedes it. And the decisions preceding it in this case include the Court's decision that the NASD is the exclusive arbitral forum. Is it your position that the only basis is that that decision came before the remand decision? No, Your Honor. The true basis for this Court's jurisdiction, and this is a well-established    case, is that if there's jurisdiction at the time of removal — I understand that. I'm with you on that. So the later Federal — the decision on the later Federal claim is just like a decision on any other Federal claim. And the Court then might remand, but it doesn't remand for a lack of removal jurisdiction, which means this Court has jurisdiction to review both the remand order and any decision that precedes it. And if that weren't the case, then if a claim were removed, say, under — as a Section 1983 claim, and the Court decides it and remands, you wouldn't go back to State court to re-adjudicate the 1983 claim. You would obviously take jurisdiction to review the 1983 claim on appeal. Okay. But we've got to have some jurisdiction in order to review the — the NASD ruling. That's correct. We've got to have appellate jurisdiction to review that order, wholly apart from the remand situation, don't we? That's absolutely correct. And that you found under Section 16 because you say that's the functional equivalent of the denial of a right to arbitrate. Have I got that right? I'm just trying to get the sequence right. It's correct that we have an additional ground, which is the ground under Section  We have two bases of affirmative jurisdiction for this Court to consider these orders. The first is under Section 16, when the Court denied the arbitration rights by refusing to compel arbitration before a substitute tribunal. And there's a second affirmative ground under 1291. And this is under the Supreme Court's decision in Quackenbush. A 1291 — 1291 covers a remand order because, as the Supreme Court explained, it's a final decision for purposes of Federal court. At that point, the case is terminated in Federal court, and it goes back to State court. And as with any other final order, the Court has jurisdiction to review both the specific order under review, which is the remand order, which also encompassed the earlier decision on arbitration. It's just like any other case, even if it hadn't been in the removal context. Once a case is brought in Federal court and it proceeds to judgment, the appellate court has jurisdiction to review both the final judgment and any order that preceded that judgment in the case. Well, you don't mean that literally, do you, or at least in your reply brief, in response to the argument that plaintiffs seek to bring up, in fact, challenging the arbitration decision in the first instance, you clearly suggest, well, that's a ground that's not properly before us. So where is that line drawn? We agree that ordinarily that decision would be subject to review, but for Section 16. We believe that the policy of Congress in Section 16 showed that that decision should not be subject to review because it's more appropriately challenged after the completion of the arbitration process. And turning to this case, it's because these principles are well established. The plaintiff's second argument instead is that there was an improper removal under Section 205, but looking to the plain language of Section 205, it's rather clear that Congress created jurisdiction whenever the action merely relates to an agreement that is subject to arbitration. And plaintiffs, in effect, are asking this Court to rewrite the statute. Congress deliberately created a broad removal provision so that any case that is conceivably subject to arbitration goes to the federal courts so the federal courts can reach the decision on arbitration. And the logic being that this creates a uniformity of review because those substantive decisions go up on appeal where federal courts can establish decisions on a multistate basis. Are you now arguing the issue that really isn't before us, whether removal was proper in the first instance? The plaintiffs have put that issue. I know I put that, but your first step would be that's not properly before us, I take it. And if it were anyway, the removal was okay. The order did say the removal was okay, but in full disclosure to the Court, we believe that if the removal were improper, the Court would lock subject matter jurisdiction, which is a question always before the Court. But we think the district court was plainly correct in its decision. I'm not sure. You've now gotten me very confused about what your position is. I should have thought it very clear that somebody cannot appeal an order that grants a request to arbitrate. That's correct, Your Honor, but there's a difference between the decision under Section 205, which is a limited inquiry. It just asks. Do you want us to review that order? We would rather you not review that order. I think that order is Alice in Wonderland. So if you want us to review that order on the merits, I'd be very happy to do it. No, Your Honor. If the panel is inclined not to reach that decision, we're perfectly happy sticking with the district court decision that ruled in our favor. We just believe that because the plaintiffs have put it in issue, we're responding to that point. So unless the panel has further questions on jurisdiction, I'll cede time to the merits. Okay. Mr. Barnes. Thank you, Your Honors. The backdrop for this discussion of the merits really is this Court's decision in the Republic of Nicaragua. An arbitration clause that is arguably susceptible to an interpretation that the parties agreed to arbitrate requires that arbitration be compelled. In the specific context of this case, the question is whether the identification of the NASD in the contract overrules the application of Section 5 of the Federal Arbitration Act. Here it does not. I think all three cases that seem to be the primary cases that we've considered are in agreement that the standard is there must be a clear intent to make the selection of the forum as important as the agreement to arbitrate. That would be the Salomon case, with which we don't entirely agree, the Brown case from the 11th Circuit, and the Zeckman case that both Brown and Salomon relied on. Our contract here says the parties agree to arbitrate, period. Then comes the election, the possible election to arbitrate under the rules of the NASD. That is different than the clause in Salomon. Our contract says under the rules of the NASD, not before the NASD. Salomon noted that there were other cases saying before the rules meant before. There's a problem with that reliance on those cases. Well, Salomon almost looks like an outlier in the cases. So, Salomon, notwithstanding, though, are you saying that the clause in question is neither a selection clause nor an exclusive selection clause? Or are you saying, well, it ain't an exclusive selection clause? Your Honor, I would think I would say both. One reason that I would say both is that our contract has a New York choice of law provision. As Salomon recognized, New York, under the Cowan case, specifically says that when you say under the rules, that means rules, not forum. And that's a key distinction from Salomon. In addition, in our case, it is elective. Unlike Salomon, where the language was much more integrated, the option was to elect to arbitrate under the rules of the NYSE, not arbitrate. It's not elective on the other side. I mean, it's hard to read because it's – there are words missing or it's written in a, I'll say, polite, ungrammatic fashion. But the option wasn't your client's. Your Honor, I think it was, actually. Because it says, as the undersigned, you may elect. I agree that that is confusing. Everywhere else in that contract, undersigned refers to the REDM parties. And everywhere else in that contract, you refers to DBSI. So I agree that there is some confusion. The nature of customer agreements being what they are, I can't believe that Deutsche Bank Securities, or whatever it was called, was able to retain the selection of forum decision. That decision, as I understand it, almost always goes to the customer. Your Honor, I think the customer had the option to elect it in the first instance. In the second instance, it says, if you do not make the election, if the undersigned does not make the election, then you may so elect. There's a second sentence there in our clause. So it looks to me as though either party could elect. But part of the point is that if either party can elect, then either party can also not elect, or both parties could not elect. And that is not a situation that shows a clear intent to make this possible election as important as the unqualified agreement to arbitrate. Moreover, the NASD rules... We're talking about exclusivity now. Yes, and also essential, whether the forum is so essential that if the forum is unavailable, Section 5 will not apply. Isn't it slightly bizarre to, when you say, well, the first point too, isn't it slightly unusual if two parties get together and say, you know, we're going to arbitrate this under the rules of the NASD, to say they're not even contemplating that that's where the arbitration is going to take place, assuming the NASD will do it. I think they... It may not be exclusive, but it certainly sounds like you're saying, well, you know, that's where we expect to go. I think there may have been an expectation that that is what the parties would elect, but they left themselves the option. Okay. And I think that's the point. In addition, the NASD rules do not... This isn't an election question in that sense, though. This case isn't really an election. They didn't have any, they couldn't elect, could they? Well... They could not elect to arbitrate. They could not elect to arbitrate. They could elect whether or not to go to the NASD. But I mean to say, at the end of the day, they can't go to the NASD, right? Here the NASD has said that it is unavailable. That is correct, Your Honor. If it's interpreted as a form selection clause, as most other circuits appear to do, I think none of the rest of them has gone the next step and said, you can appoint an arbitrator. They've sort of said, this is it. This manifests an intent to arbitrate there and nowhere else, in effect. Your Honor, I think the most of the balance of the cases are situations where there is not unavailability. For instance, the Luckey case. The question was, do you have to go to one of these three fora? And there was no showing that all of those fora were unavailable. Therefore, Section 5 isn't even implicated in that case. They say the fact that it became unavailable. You'd have to have a case where all three fora are unavailable. Does anything else matter to that?  No, I don't believe it does, Your Honor. But I mean, to the point that I don't recall other cases having taken the next step. Once they've said New York Stock Exchange is the designated forum, if it becomes for whatever the reason unavailable, they have not, they seem to can't appoint a substitute. Salomon did do that, Your Honor. Salomon takes that step, right? Yes, it does. And then it relies on a bunch of cases that don't take that step. Don't take that step. But it takes that step. Salomon is weak for two primary reasons. It doesn't say why it's taking the step, for one thing. Correct, Your Honor. I don't think that they had anything, at least as I read the opinion, the Court didn't have anything before it other than the arbitration clause. I didn't see any extrinsic evidence or other evidence that that meant that arbitrating before the NYSC was as important as arbitration. Contrast the Brown case where, again, the Court had a very similar clause in front of it and said, well, we're going to, yes, of course you appoint different because there is no additional evidence to show that that intent to arbitrate in front of that particular forum is as important as arbitration itself. And again, Salomon, I think by relying on the cases where the fora were not unavailable, that was a weakness in the case. Also, a distinction in the case here is the New York choice of law provision, which I think is critical. And then finally, I would just like to say that the district court here looked at the contract and said that, well, there's a reference to the panel typically including a minority of arbitrators from the securities industry. That is true in NASD arbitrations. But again, that sort of language, typically might include, might be expected to, is not the same as the panel must include. The arbitration must be before. We don't have the kind of language that indicates the same clear intent to make the NASD the exclusive forum as the clear intent to arbitrate here. Plaintiffs have also, unless there are any other questions. You happen to know the Salomon case, what State law pertained? They appear to have decided under Federal law, Your Honor, because they specifically rejected the application of the New York precedent saying that arbitration under the rules means rules, not forum. Plaintiffs have also asked the court to affirm on another ground, which is essentially an unusual application of the affirmance on any ground doctrine. They've asked the court to affirm by reversing the district court's December 2004 order. We don't think that's appropriate for several reasons. First of all, I do think that 9 U.S.C. Section 16C, at least as a policy matter, indicates that the time for reviewing an order of compelling arbitration is after the arbitration, not before. In addition, this affirmance of the other ground is not dispositive. The district court found that we were entitled to arbitration under the contraptual right theory. Plaintiffs have not addressed that before this court and therefore waived that argument. And then finally, equitable estoppel. The record does not support reversal of the December 2004 order. Equitable estoppel is invoked by the district court in its discretion. Here, there were two bases for invoking equitable estoppel. The complaint raises allegations of substantially intertwined and concerted misconduct. In particular, the complaint alleged that all defendants were agents of each other defendant and that they acted as a joint venture. And the alleged misconduct is founded in and intertwined with- How far down the food chain does the reasoning go? I mean, you have to admit that it's absolutely amazing that a customer agreement with one entity that's not in the litigation but it was a subsidiary of another entity that's not in the litigation now supports arbitration by two people who had nothing to do with the customer agreement. Your Honor, at paragraph 140 of the complaint, plaintiffs allege that this was a unified scheme, that all defendants colluded together and acted on behalf of each other and that each was a necessary participant in this scheme. And in addition, they've acted, they've alleged that at all times defendants were the agents of each other. So I think that again, without these- I was in arbitration with my broker on account of not placing stock the way I wanted it placed. So all of a sudden now we've got in front of an arbitrator who does that kind of thing, we've got this whole unrelated entity. I wouldn't say that it's unrelated, Your Honor. In this case, the plaintiffs opened these customer agreements to engage in the tax strategies as they pleaded. And the record is- that is on the record. Thank you, Your Honors. Ms. Lindgren. Good morning. I'd like to first address whether or not the order appealed from is reviewable in this court. I think when a district court remands a case for lack of subject matter jurisdiction, any decision that it makes intertwined with that remand order is not reviewable. That's the law in this circuit. It's the law of the U.S. Supreme Court. And that's the law regardless of whether it's removed under a statute or not. Things Remembered makes clear by the U.S. Supreme Court that if you remove under a statute, it's not reviewable if there's an intertwined decision. This court in Hanson made that clear. This court in the Abu Dhabi Charles Schwab case made that clear. And most recently, the U.S. Supreme Court in the Kircher decision made that clear. The Kircher decision says, We have relentlessly repeated that any remand order issued on the grounds specified in 1447C is immunized from all forms of appellate review. The appellants attempt to make a distinction here because it was removed under a statute, Section 205, and therefore, any later decision as to whether arbitration is available is subject to review. That proves too much. No, the distinction is the case was removed and the district court said it's properly removed. It's properly removed. We're going to send it to arbitration. The case goes sent to arbitration and the particular arbitrator said, We don't care to arbitrate it. Then the district court decided, Oh, okay, now we're going to send it back. The district court did not say there was no jurisdiction on removal. The district court said, Now I've lost jurisdiction later on because of something the NASD did. That is far outside the cases you're citing. I believe the cases you're citing are where either there's no jurisdiction ab initio or something happens later and the district court says, Oh, there wasn't any jurisdiction ab initio. That's not this case, I don't believe. I believe it is for two reasons. First, the cases do not make the distinction about a later event occurring that removes jurisdiction, which I'll address. If you look at the statute, it says Really? There are no cases that say we're not talking about later events? No, there are. And I'm going to address those in just a second. I thought you just said the cases don't make the distinction. They don't make the distinction that appellates make. And perhaps, first of all, 1447 talks about if the lack of jurisdiction appears at any time before judgment, which is the case here. Further, when Judge Taylor entered his initial order, he recognized that the NASD might not have jurisdiction and he stated at oral argument that it was up to the NASD to make that decision. So I think when it was submitted to the NASD, that ties back to what Judge Taylor had in mind. But more importantly, the post-removal distinction that's made by appellants, I went through those cases. And what those cases state, including Price by this Court, is that if a Federal court has jurisdiction, it disposes of the Federal claims and has pendant jurisdiction over State claims, and it then remands those State claims, that's considered discretionary removal and it's not subject to 1447C. There are no cases that I've found where a court remands finding it has no jurisdiction, which is clearly the case here. But Judge Phillips clearly remanded on the grounds that she had no jurisdiction now, that that would be now and not originally. Correct, but I don't think that that would make a distinction. I don't think she would. I just don't understand that, because jurisdiction speaks as of the time of removal. So she didn't purport to find that the court, the Federal district court, lacked jurisdiction upon removal. I mean, she made no bones about it. She found that the court lacked jurisdiction now in light of events that happened subsequent. Now. Correct. And I think under the authority, the U.S. Supreme Court and Ninth Circuit, that that would not make a difference. For the reason that she did remand on the lack of subject matter jurisdiction and the cases say that's not a revealable order, whether rightly or wrongly, it was not a case where you could look through the order to see whether the characterization of it is proper or not, right? That's correct. Okay. Whether the court has authority to do what it does, right? That's correct. Okay. So she says very plainly, I no longer have jurisdiction. I had it. I had it upon removal. I've had it up until now. But as of right now, given stuff that happened after the action was removed, I no longer have it. I don't. Is jurisdiction floating? I mean, is removal jurisdiction a floating concept now, you're saying? So whenever she says, you know, I just don't think I've got it anymore. I think in this case, nothing had happened other than the case was submitted to the NASD, which found no jurisdiction to resolve it, which was contemplated by Judge Taylor's order. Judge Phillips got the case and said, I no longer have jurisdiction. I'm remanding. I don't think that's a reviewable order under the authorities of the U.S. Supreme Court or this circuit. That sounds like a non-sequitur. The NASD isn't going to decide federal jurisdiction. Oh, no, no. The NASD can say, we don't take jurisdiction. And now you're sort of begging the question. The question is, when they say we don't take jurisdiction, is the matter now not arbitrable? That's the question. If the order is going to be reviewed, that is the question. That's correct. Now, the NASD did decide its own jurisdiction as contemplated by Judge Taylor. Well, I understand what they did. They didn't have jurisdiction over the case. I don't see any case, I haven't seen yet, any case that says where that happens and the district court, all this property moved, it's going along, the district court says, you know, my daughter was in an auto accident yesterday and therefore I don't have jurisdiction. I'm remanding it. Yeah, I know I don't have jurisdiction anymore since my daughter had an auto accident so I'm going to remand the case. And the appellate court says, well, can't do anything about that. That's what she says. That's what she says. That's what you're arguing to. And that doesn't, that doesn't seem like it would be the system and I don't see any cases that say that's the rule. If, if, the post-removal cases? Take my example. That's what I do. I'm the district judge and I've got removal jurisdiction and I'm going along trying the case and I say, oops, my daughter had an auto accident today. I don't have jurisdiction anymore. I'm going to remand. And you're saying federal court can't review that. That's your position. I think that is. An appellate court can't review that. I think that is the case. I understand your position perfectly. Thank you. But if I may address the post-removal cases because I think that is an important issue. The post-removal cases cited by appellants do not stand for the position that any time there's a post-removal event getting rid of jurisdiction that that will, is not reviewable. With those. That's true. But in those cases the post-removal event simply caused the district judge to conclude that the federal court lacked jurisdiction from the beginning. So it's, you're absolutely correct. There's some post-event occurrences that are, that do shed light on appropriate jurisdiction. But this one doesn't. There's no pretense here about the shedding light on original removal jurisdiction. If I may, I would submit that there was no original removal jurisdiction in this case because this case was not subject to an arbitration. That's a different question. That is a different question. That's not what the district court decided. If I could just point the court to a Sixth Circuit case that dealt very succinctly with this post-removal issue and what the Sixth Circuit says, the post-removal event doctrine is implicated only when a district court makes a discretionary remand of penitent state law claims following the dismissal of the federal claim or party. You know, I'm just, I confess to being very thick on it, but I don't understand what's discretionary here. What do you say is the discretionary decision? Oh, I'm distinguishing here. This was not a discretionary decision. Okay. The reviewable cases are the discretionary decision. If a court loses or resolves the federal claims, so no longer has the federal claims, it remands penitent state claims. That's a discretionary decision, and that's reviewable. And that's the distinction that's made in the cases. And? So, I don't think that the post-removal event doctrine allows this case to be reviewed by this court, because this is not such a post-removal event. But that's exactly what the court did. Originally, it was removed as federal jurisdiction, because of 205, I think it is. It was removed, and along with that had to come any state claims involved. There were plenty of state claims, plenty of claims, but I think along with that came those claims. And the district court later says, gee, I've lost federal jurisdiction. And that gave the district court discretion to remand the state cases. And it did remand them, but it didn't think that it was doing it on its discretion. It thought it lost jurisdiction, it said. Correct. The court clearly did it on its discretion. How did it lose jurisdiction? There were still all those state cases. All those state claims were there in front of it, and it was properly removed in the first place. I would submit it wasn't properly moved in the first place. Well, the district court said it was. The district court said different. Let's say just in my special universe that's not even within our cognizance. The district judge said, I have jurisdiction. Now the district judge says, I don't have jurisdiction anymore, and has got a bunch of state claims against these folks. Isn't that a discretionary call, whether to go on with them or send them out? I don't think that falls within the line of cases which happened after there was some resolution of a Federal claim. They went to litigation, it was resolved in summary judgment, whatever, and they remanded the pendant claims. But I think that the Court would like me to address the propriety of Judge Phillips' decision, so perhaps I should move on to that part of the argument. Nice segue. I'd like to address the It's hard to address this without starting from the position that there's no arbitration agreement between the appellants and KPMG or Sidley, the two parties standing here. So talking about the intent of the parties, they had no intent. No one ever understood that this particular arbitration agreement would cover these claims. It's not with these parties. Yeah, but that's water over a dam that we can't visit. I would let me get to that in a minute, but let's first address Judge Phillips' order. The cases are fairly uniform that when there's a self-regulatory organization designated in an arbitration agreement, that's a form selection clause. And that's an exclusive form selection clause. And the Solomon case, I don't view as an outlier. I view that as the leading case in this area. Do they say it's exclusive or do they say you have to try there first? I mean, most of the cases that I saw involved a clause that identified an SRO and the parties go to AAA or somebody goes to AAA instead. And the idea isn't that, I don't think the decisions say AAA couldn't ultimately be an appropriate form. They say, look, if it says SRO, if it says the New York Stock Exchange or NASD, that's where you're supposed to go to first. And then here you have the wrinkle, which I don't think comes up in those cases where the I think they do say it's an exclusive form, but you're right, the wrinkle didn't come up, but it did come up in a series of cases. It came up in the Solomon case, and they said no, then it goes to court. It came up in two California cases, state cases, which we've cited to the court. It came up in a district court case in this California northern district case, Spiegel and Allen. And in all those cases, they said when there was a failure form, then they would not appoint substitute arbitrators if the case proceeded in court. They tend to rely on the Solomon reasoning, but Solomon didn't have any reasoning. It just cited all the other cases that Judge Clifton just spoke of. It cited all the other cases that, yeah, of course you've got to go to the NASD. Yeah, you do. You can't use the window. The window's closed. The window's open. They use all that kind of language. But where else is the reasoning? Solomon doesn't say why it is that it's exclusive. It just says it's exclusive, and those cases say so, and they don't. So what's the best argument that it is exclusive? It's not in Solomon, but it may be with you. The Solomon case and every the cases it relies on, it may be that those cases did not involve appointing substitute arbitrators. But each of those cases says a form selection clause is part of the agreement of the parties, and it's to be enforced. It's considered exclusive. Let me ask you on that point, because I don't think any of these other cases acknowledge they had a severability clause. And this agreement does have a severability clause that pretty clearly says if any part of it is unenforceable, then the remaining part has full force and effect. So if the New York Stock Exchange NASD, excuse me, provision is unenforceable for whatever the reason, then doesn't that leave in place the arbitration? Arbitration under the NASD rules? It doesn't affect that at all, does it? So why isn't that just a simple answer to this substitute question? I think you start with the proposition that in this circuit, there must be an agreement of the parties to arbitrate what the appellants are asking. Which there is here, right? No, there's not. Well, that's water over the dam. You know, I hear the Court say that, but I do think the Court can uphold the order on any reasonable grounds. And this case was filed in 2004. The whole point of even grounds over which we lack jurisdiction, appellate jurisdiction, if the Court is going to review the order remanding the case, I think it can uphold the remand order on any grounds. Even though we lack appellate jurisdiction over the ground that you want us to uphold it on? No. I think in the first instance that this Court has no appellate jurisdiction and that's the end of the story. We don't review anything. You're missing my point. Is that we lack appellate jurisdiction over the order enforcing finding an arbitration agreement saying all these parties it's related to it and off you go. It is true that we were not able to immediately appeal Judge Taylor's order. Right. That is correct. Now we're sitting here two years later. There's still no jurisdiction to appeal Judge Taylor's order. I think your position is because the order's here somehow once the order's here you think we should entertain other arguments concerning the order. Now that's an unusual situation. Is there any authority that speaks to that situation? The cases that say that simply the cases, the general cases that say an order can be upheld on any alternate grounds and for judicial economy it would make no sense for us to wait two years to come up here and then only to review Judge Phillips' order when I think there's serious issues with respect to Judge Taylor's order send us back, go to arbitration and come back two years later. That makes no sense. So I think it's just a common sense argument that the court forward to seeing you. That's it. So if I may in front of Judge Phillips How much time do I have? You've got three minutes. Okay. Then I do need to address two things. First Judge Phillips' order there was no motion pending before her to appoint substitute arbitrators so that was not in front of her. So I think the notion that somehow this court should decide substitute arbitrators should have been appointed is not here. Further, to the extent that the Britain case in the Ninth Circuit makes it clear that it's the intent of the parties there is no intent and that's why they sometimes appoint substitute arbitrators. They do it on the grounds that the intent of the parties is to arbitrate and therefore the form is not as important. In this case there was no intent of the parties to arbitrate. None of the parties even had an arbitration agreement and I think you have to look to the fact that the only Deutsche Bank defendant in this case was the bank. The only wrongdoing was Deutsche Bank AG. Deutsche Bank AG's documents all reflected that disputes would be resolved in a court of law. So there was certainly no intent with Deutsche Bank AG to go to some kind of an arbitration forum nor with the other parties. So an alternate arbitrators could have only been appointed if that was to effectuate the intent of the parties and that just was not the intent here. And if I may just to get back to Judge Taylor's ruling which I understand the court's view on that but I think we should look at that for a moment. This is a case that had no wrongdoing alleged against Deutsche Bank Securities Inc. We're not aware of any The account could have been with anyone. The wrongdoing was Deutsche Bank AG, KPMG, and Sidley and it was based on a Senate report that found wrongdoing by the three of them and joint wrongdoing. There's no arbitration agreement with any of them, no intent that any disputes would have been arbitrated and if anything, Deutsche Bank AG made it clear that any disputes with them would have to be resolved in a court of law. So to the extent someone's coming in here and asking that substitute arbitrators be appointed there's no basis for that. It would not effectuate any intent of the parties to do so and I think that that's an appropriate grounds to uphold Judge Phillips' order although I do believe that Judge Phillips' order is in line with the only cases that are out there where a form declines jurisdiction and someone does request that substitute arbitrators be appointed. Thank you. Three very quick points, Your Honor. The first point is the Court's correct that Solomon was wrong to take the extra step that it did. The question is whether the contract unambiguously restricts arbitration to the named form. Here the contract doesn't even it's silent as to what happens if the NASD is unavailable. So the language is simply ambiguous and where it's not necessary to read the language as restricting arbitration before the NASD, it's necessary under the FAA to restrict not to read the language that way. The second point is that Judge Fernandez and Judge Rimer are both correct that jurisdiction is determined at the time of removal and that's all that matters in this case and that's sufficient to establish its Court's jurisdiction. The third point is just the quick request that we do have a motion for a State pending and if the Court's inclined to rule in our favor, we'd appreciate Let me ask you a question about that. I have a little trouble understanding exactly how a State works because the remand order has been executed. Right? It has. The action, the file, the whole bit left 312 North Spring Street and is now living someplace in Superior Court. I'm not quite sure how a State works on it. I can understand having an order of some sort that the District Court vacate its remand order and notify the State Court that it's transferring the action back and is to do that. But I'm just having a little conceptual trouble about how this Court can somehow stay and execute an order. Your Honor, in the same way that this Court can vacate the order, it can stay. The State simply stops the legal effect of the remand order. It effectively stops the transfer of jurisdiction from the State, from the Federal Court, to the State Court. It's already happened. Here's the problem I've got with it. In effect, what you're asking is for us to enjoin the State Court proceedings. I mean, that's what you're effectively asking. That's what you really want. You don't care about all this other stuff. You just want to get that stopped if you win here, while other proceedings, whatever they may be, go on. And I have trouble with that, because you haven't given us any justification for doing that, which I think raises a whole other kettle of worms. Your Honor, I don't believe it's technically an injunction of the State Court action. It actually removes the State Court action is only proceeding on the authority of the jurisdiction when the remand order was transferred back to the State Court. If that legal effect, the legal effect of remanding the case is stayed, then the State Court doesn't have jurisdiction to proceed at all. So it's not a situation where you have parallel proceedings. Both courts have jurisdiction, and the Federal Court is trying to stop the State Court's jurisdiction in its tracks. It's actually a case where jurisdiction is in one court or the other. When the Federal Court has jurisdiction, and if it pulls back the jurisdiction, which it does by entering the stay order, then the State Court doesn't have jurisdiction at all. There's nothing to enjoin. Okay, thank you. Ms. Lindgren, would you care to respond on that issue? Thank you. Yes, I would. Essentially, they are asking to enjoin the State Court action. This case has been returned to State Court. Discovery has been conducted by both parties in that action, and we have a trial date set. So to which is what, May 2007? Yes. So to suggest that the Court should enter a stay at this point, I don't think that it could enter a stay because the case is proceeding. It would be the functional equivalent of enjoining the State Court from proceeding. There are other parties who are not subject to the appeal who are in that case who remain parties to the order that will be going to trial. The same discovery will be conducted regardless of whether whatever happens with these two parties. So the other issue, of course, is that there's no harm ongoing here as the case proceeds in State Court. Thank you for your input, and we do appreciate the argument. It's admirable that you have a fine argument, and we appreciate it. And that, or just argued, will be submitted.
judges: Fernandez, Rymer, Clifton